# THE BELVEDERE BUILDING COMPANY *vs.* OLIN BRYAN.

*Passenger Elevators—Degree of Care Requisite in Operation—Evidence—Instructions.*

The owner or operator of a passenger elevator is bound to exercise the highest degree of care and diligence practicable under the circumstances to guard against injuries to persons carried in such elevator.

Plaintiff's evidence was to the effect that while he was in the act of stepping to an upper floor in defendant's hotel from a passenger elevator, after it had stopped and a door had been opened, the man in charge of the elevator suddenly caused it to descend and that this negligence

resulted in serious injuries to the plaintiff. The defendant's evidence was to the effect that the accident [to the plaintiff was caused by his attempt to get off of the elevator before it had stopped. *Held*, that the jury was properly instructed]that the plaintiff is entitled to recover for the injury if they find that the defendant was negligent in the operation of the elevator, that this negligence was the cause of plaintiff's injuries and that the plaintiff was in the exercise of due care.

*Held*, further, that defendant's prayers setting forth that there is no legally sufficient evidence of negligence on its part were properly rejected, since there was evidence that plaintiff's injuries were occasioned by the negligence of defendant's servant in the management of the elevator, although there was no evidence tending to prove negligence of the defendant in failing to provide an elevator with proper machinery and appliances.

Appeal from the Baltimore City Court (WRIGHT, J.), where there was a judgment for the plaintiff for $10,000.

*Plaintiff's 1st Prayer.*—The Court instructs the jury that if they find from the evidence that on December 10th, 1903, the plaintiff visited the hotel of the defendant which was situated in Baltimore City, and then run and conducted by the defendant, if they so find, to partake of an entertainment of a light lunch provided by the defendant for compensation at the request of the plaintiff for himself and others, if they so find; and further find that the room in said hotel furnished by the defendant for said entertainment to be served in was on the second floor of said hotel; and further find that one of the means or modes of reaching from the first or office floor of said hotel to the said room, in said second floor, where said entertainment was to be furnished, provided by the defendant for the plaintiff and others of the party, was a passenger elevator operated by the defendant's servants, if they so find; and further find that on said date the plaintiff entered said elevator on the first or office floor of said hotel to be carried thereby to the room on the second floor where said entertainment was to be served, in order to partake of said entertainment if they so find; and further find that the plaintiff after entering said elevator on the first or office floor, and while being carried by said elevator to the said second floor and in

leaving said elevator at the second floor, exercised reasonable and ordinary care, if they so find; then the degree of care, under the law, due and owing from the defendant to the plaintiff, while he was being carried by said defendant in said elevator from the first or office floor to the second floor, and while the plaintiff was in the act of leaving said elevator at the second floor, was the highest degree of care and diligence practicable under the circumstances.    (*Granted.*)

*Plaintiff's 2nd Prayer.*—The Court instructs the jury that if they find from the evidence that on December 10th, 1903, the plaintiff visited the hotel of the defendant which was situated in Baltimore City and then run and operated by the defendant, if they so find, to partake of an entertainment of a light lunch provided by the defendant for compensation at the request of the plaintiff for himself and others, if they so find; and further find that the room in said hotel furnished by the defendant for said entertainment to be served in was on the second floor of said hotel; and further find that one of the means or modes of reaching from the first or office floor of said hotel to the said room on said second floor where said entertainment was to be furnished, provided by the defendant for the plaintiff and others of the party, was a passenger elevator operated by defendant's servants, if they so find; and further find that on said date the plaintiff entered said elevator on the first or office floor of said hotel to be carried thereby to the room on the second floor where said entertainment was to be served, in order to partake of said entertainment, if they so find; and further find that the plaintiff after entering said elevator on the first or office floor, and while being carried by said elevator to the second floor, and in leaving said elevator at the second floor exercised reasonable and ordinary care, if they so find; and further find that as the plaintiff was in the act of stepping from the car or cage of the elevator to the hall of the second floor; and while exercising reasonable and ordinary care, if they so find, said elevator, by reason of the negligence and carelessness on the part of the servant of the defendant in operating the same, suddenly descended in the shaft

and then ascended in the shaft, passing the open door leading from the shaft to the hall of the second floor, if they so find; and further find that the injury to the plaintiff, complained of and testified to in this case, was occasioned by the said sudden descent and ascent of such elevator, which was caused by the said negligent and careless operation of said elevator by the servant of the defendant, if they so find, then the verdict of the jury should be for the plaintiff. (*Granted.*)

*Defendant's 4th Prayer.*—The jury are instructed that it was the duty of the plaintiff not to touch the handle of the door, or to attempt to open the door to leave the elevator before the elevator had reached the floor upon which the plaintiff was to leave and the elevator had stopped, and the door had been opened by the operator; and if the jury shall find, that the plaintiff did open the door and attempt to leave the elevator before it was stopped, and the plaintiff was injured, as given in evidence, then the plaintiff was guilty of contributory negligence, and, therefore the verdict of the jury must be for the defendant. (*Granted.*)

*Defendant's 5th Prayer.*—If the jury shall find, that the plaintiff's own want of due care, contributed in any degree directly to the accident in question, so that if he had exercised due care it would not have happened, then he is not entitled to recover in this action, although the jury shall, also, find that the operator of the elevator was guilty of negligence. (*Granted.*)

*Defendant's 6th Prayer.*—If the jury find from the evidence, that the defendant provided and maintained in its hotel a proper, suitable, safe and securely constructed elevator, with a safe and proper shaft or well for the said elevator to move in, and that the same was operated with care, but that by some unknown and undeveloped cause, the said elevator fell, and the plaintiff was injured as referred to in the testimony, then the defendant is not liable for such injury and their verdict must be for the defendant. (*Granted.*)

The cause was argued before McSherry, C. J., Page, Boyd, Pearce, Schmucker, Jones and Burke, JJ.

*Wm. Pinkney Whyte* and *Roland B. Harvey* (with whom were *Miller & Bonsel* on the brief), for the appellant.

There was no legally sufficient evidence or any evidence whatever, tending to prove that the accident and injuries to the plaintiff, complained of, were occasioned by the negligence of the servant and conductor of said elevator of the defendant in operating the same. Consequently the first prayer of the defendant should have been granted and the case taken from the jury. *McGrell* v. *Buffalo Office Building Co.*, 153 N. Y. 265.

"As an injury may occur from causes other than the negligence of the party sued, it is obvious, that before a liability on account of that injury can be fastened upon a particular individual, it must be shown, or there must be evidence legally tending to show, that he is responsible for it, that is, that he has been guilty of the negligence, that produced or occasioned the inquiry." *Benedick* v. *Potts*, 88 Md. 55. There was no proof whatever as to the cause of the accident, and the jury should not have been permitted to conjecture how an accident occurred. *Borden* v. *R. R. Co.*, 131 N. Y. 671; *Railroad* v. *State*, 73 Md. 74.

The doctrine of *res ipsa loquitur* cannot be applied here. It is only applicable to two classes of cases, viz: When the relation of carrier and passenger exist and the accident arises from some abnormal condition in the department of actual transportation. Second, where the injury arises from some condition or event that is in its very nature so obviously destructive of the safety of person or property, and is so tortious in its quality, as in the first instance at least to permit no inference save that of negligence on the part of the person in control of the injurious agency, *Thomas on Negligence*, 574.

The burden imposed by the application of the rule of *res ipsa loquitur*, to the unexplained slip of an elevator, was removed by proof that it was purchased from a reputable maker, was in charge of a competent engineer and operator, and worked before and after the accident without trouble.

In the case here referred to, the Court said: It is alleged

by the plaintiff that the elevator, from some unexplained reason, on that evening, went down. What caused it to descend does not appear. "There is no evidence that the operator of the elevator was at fault; no evidence that any other employee of the defendant was at fault; no evidence that the elevator itself was out of order; nothing to charge the defendant with any negligence except the mere fact that the elevator did slip on this particular occasion, *the evidence being uncontradicted that before and after the accident the elevator worked properly, and nothing wrong with it was discovered.*" "There is nothing in the record to justify the finding that the defendant omitted any precaution that it was possible for the most prudent man to take to insure the safety of those using the elevator." *Huebner* v. *Heide*, 73 App. Div. 200.

Defendant's second prayer should have been granted. The cause of the injury to the plaintiff, whether he was thrown out of the car by attempting to leave before it stopped, or from some unknown circumstance, it is hard to understand, for even his own description of the circumstances throws no light upon the subject.

"Negligence is purely relative." "In every instance, it essentially involves some breach or omission of a duty thereby owed to another. Without this, it cannot be predicated of any act. For a mere accident, unmixed with negligence or fault on the part of the person to whom it is attributed, no action will lie." *Gault* v. *Humes*, 20 Md. 297; *Washington, etc., Turnpike Co.* v. *Case*, 80 Md. 45.

"An accident, then, which furnishes no cause of action, is an inevitable occurrence, not to be foreseen, and prevented by vigilance, care and attention, and not occasioned or contributed to in any manner by the act, or omission of the company, its agents, employees or servants." *Carroll* v. *Staten Island R. R. Co.*, 58 N. Y. 126; *Washington, etc., Turnpike Co.* v. *Case*, 80 Md. 45.

The plaintiff's first prayer should not have been granted, because it imposed upon the defendant in operating and running an elevator in its hotel, in the carriage of a person not a

guest for pay, and holding no contractual connection with the owner of the hotel, a degree of care, towit: "The highest degree of care and diligence practicable under the circumstances," which is in conflict with the decisions of this Court in cases heretofore adjudicated by it.  *People's Bank* v. *Morgolofski*, 75 Md. 433; *Wise* v. *Ackerman*, 76 Md. 575. See also *Engel* v. *Smith*, 82 Mich. 1; *Shearman & Redfield on Negligence*, sec. 719; *Griffin* v. *Manice*, 166 N. Y. 188; *Edwards* v. *Manufacturers Co.* (R. I.) 61 Atl. R. 646.

*Thomas G. Hayes* and *John C. Tolson*, for the appellee.

1. There is abundant evidence in the record to show that the negligence of the servant of the appellant, in operating the elevator, was the proximate cause of the injury received by the appellee, as he was stepping from the elevator to the hall on the second floor.

2. The legal *status* or relation, when the accident occurred, between the appellant, as the proprietor of a public hotel or inn, with passenger elevators operated by it to transport persons entertained in said hotel or inn from floor to floor, and the appellee, a person being so entertained and transported as a passenger in the appellant's passenger elevator, when he was injured, to reach the room on the second floor, where the entertainment was to be served, was such that the degree of care due from the appellant to the appellee under such conditions was as stated in the appellant's first prayer the *"highest degree of care and diligence practicable under the circumstances."*

This proposition is sustained and approved by the following standard text writers: 2 *Shear.& Redf.Neg.*,secs. 719A and 487; 8 *Cyc.*, 596; 10 *A. & E. Ency. Law*, 946; *Ray Neg.* (Carrier of Passengers) sec. 96, p. 309, sec. 1, p. 2; *Webb on Elevators*, secs. 4 and 7; 1 *Thomp. Com. Law, Neg.*, p. 980.

The Supreme Courts of ten of the States have decided that the degree of care due from the proprietor or operator of a passenger elevator to a passenger being transported, is the "highest degree of care and diligence practicable under the circumstances." *Treadwell* v. *Whittier*, 80 Cal. 574; 5 L. R.

A. 498; *Hartford D. Co.* v. *Solitt*, 172 Ill. 222, 50 N. E. 78; *Springer* v. *Ford*, 189 Ill. 430, 52 L. R. A. 930; *Ky. Hotel Co.* v. *Camp*, 97 Ky. 424, 30 S. W. 1011; *Goodsell* v. *Taylor*, 41 Minn. 207, 4 L. R. A. 673; *Luckct* v. *Century Bldg. Co.*, 177 Mo. 627; *Lee* v. *Geo. Knapp & Co.*, 55 Mo. App. 390; *So. Bldg. & Loan Assn.* v. *Lawson*, 97 Tenn. 367, 37 S. W. 86; *Fox* v. *Philadelphia*, 208 Pa. 127, 65 L. R. A. 214; *Ryland* v. *Horscher*, 7 Pa. Sup. Ct. 384; *Morgan* v. *Sacks* (Ala.) 38 So. Rep. 848; *Edwards* v. *Burke* (Wash.) 78 Pac. Rep. 610; *Bremer* v. *Pleiss*, 121 Wis. 61.    To these State decisions may be added a strong and well reasoned opinion from the U. S. Circuit Court of Appeals of the Sixth Circuit of *Mitchell* v. *Marker*, 22 U. S. App. 325.

3. The Court of Appeals of Maryland has virtually decided that the degree of care required of an owner and operator of elevators which transport persons, is the highest degree of care and diligence practicable under the circumstances.  There have been two cases before this Court in which elevators or their assessories had to do with the personal injuries received. The first was *Peoples Bank* v. *Morgolofski*, 75 Md. 452. In this case the injured person fell down the shaft, the door being open and bar down, and the elevator elsewhere.  The place was dark.  The proper degree of care did not and could not arise on appeal in that case, because the plaintiff in his prayers in the lower Court fixed the degree of care "as ordinary care."

The other case before this Court was the case of *Wise* v. *Ackerman*, 76 Md. 375.  CHIEF JUDGE ALVEY wrote the opinion in that case and in the two adjoining paragraphs clearly pointed out when "ordinary care" would be required of an operator of an elevator and in the other paragraphs when the "highest degree of care" would be required.   The case at bar clearly comes in the "highest degree of care" class. CHIEF JUDGE ALVEY in this case cited with approval the leading California case of *Treadwell* v. *Whittier, supra.* This question as to the degree of care is therefore virtually settled by this Court as contended for by appellee.

4. Against this great weight of authority judicially fixing

the degree of care due from an owner and operator of a pas-
senger elevator to a passenger transported on such elevator,
as the "highest degree of care and diligenence practical
under the circumstances" there are three States whose Su-
preme Courts have decided only "ordinary care" was re-
quired in such cases.   These three cases are *Griffin* v.*Manice*,
166 N. Y. 188, 52 L. R. A. 922; *Burgess* v. *Stowe*, 134
Mich. 211; *Edwards* v. *Mfg. Bldg. Co.* (R. I.) 61 Atl. Rep.
646.   The case from New York is by a divided Court.   The
dissenting opinion of JUDGES BARTLETT. and MARTIN forcibly
points out the weakness of the opinion of the majority.   The
Michigan case states ·that it is the moral obligation of the
owners and operators of passenger elevators to their passen-
gers to use the highest degree of care, but holds the jury
must not be instructed.   Why?   No reason is assigned in the
opinion for this remarkable view of the law and it may be
somewhat difficult to give a rational or logical reason.   The
Rhode Island case follows blindly the New York case ·of
*Griffin* v. *Manice, supra*, which as before stated on this subject
is by a divided ·Court.   The only independent reason assigned in
the opinion of the Rhode Island case for the decision is that
the relation of carrier and passenger does not technically exist,
as the general public have not the right to ride in the elevator.
The Rhode Island case seems to lose sight of the principle of
law that it is not the technical relation of carrier and passenger
which fixes the degree of care, but the danger· to human life
which requires the highest degree of care, in the operation of
passenger elevators.

PEARCE, J., delivered the opinion of the Court.

The defendant below, the Belvedere Building Company, was
on December 10th, 1903, engaged in conducting a public inn,
known as the Belvedere Hotel, in a building in the city of Bal-
timore, and maintained and operated therein a passenger ele-
vator for the transportation of the guests of the hotel, and those
having business with them, or with the defendant, from one
story of the building to another.   The plaintiff, now the appellee,

while rightfully upon said elevator as a passenger, was thrown or fell from it, and sustained serious, permanent injuries for which he brought suit and recovered damages in the Baltimore City Court, and from that judgment the defendant has appealed.

The declaration contained two counts, the first of which is as follows:

"1. For that on the 10th day of December, A. D. 1903, the defendant was in possession of a building in Baltimore City and conducted in said building a public inn or hotel. That the persons in said inn or hotel were carried from the cellar to the different floors by means of a passenger elevator. That the movements of said elevator were under control, direction and operation of a servant of the defendant. That it was the duty of the defendant towards its persons who rightfully took passage on said elevator, to use the utmost care and diligence which human foresight could use to provide for the safety of said persons who rightfully took passage in said elevator. That on the 10th day of December, A. D. 1903, the plaintiff visited said hotel to partake of an entertainment provided by the defendant for compensation for himself and others, and the plaintiff to reach the room provided by the defendant for said entertainment to be served, took passage in said elevator from office floor to reach the second floor of said inn or hotel; that as the plaintiff attempted to step from the elevator to the second floor, it suddenly dropped, striking him a severe blow on his left hip and crushing, contusing and lacerating the left thigh of the plaintiff and throwing him with a severe blow on the top of the rapidly descending elevator; that when the elevator passed the office floor of said building it commenced rapidly to ascend with the plaintiff on its top, and when in its rapid ascent it reached the second floor of said building, the elevator doors of which were still open the plaintiff fell or rolled from the top of said elevator to the said second floor. That the sudden dropping and ascent of said elevator as aforesaid was caused by the improper and defective construction and maintenance of the machinery and its appliances, used in

its propulsion and movements; that the injury to the plaintiff, hereinafter set forth, was caused by the failure of the defendant to perform the duty they owed the plaintiff to provide said elevator with proper machinery and appliances and to properly maintain the same.

"That by reason of said negligence of the defendants in failing to properly control and maintain said elevator the plaintiff was seriously and permanently injured. That the left hip and thigh of the plaintiff was struck and caught between the side or edge of the rapidly descending or dropping elevator and the shaft down which the elevator was falling or dropping, and crushed, contused and lacerated; that the body of the plaintiff received a severe blow as it fell or rolled from the top of the rapidly ascending elevator through the open elevator doors to the said second floor; that the viscera of plaintiff, by reason of said injuries and the shock incident thereto, were seriously injured and permanently impaired; that the brain and nerve centers of plaintiff, because of the severe shock caused by said injuries, were seriously disturbed and permanently injured; and that in sundry other ways the plaintiff was severely and permanently injured and his organs and their functions permanently injured and impaired.

"That the plaintiff before and at the time of his receiving said injuries was an attorney at law in the active practice of his profession; that his professional duties constantly require of him a vigorous exercise of his brain and mental powers; that the injuries aforesaid have permanently deprived the plaintiff of the power of continuously and vigorously exercising his brain and mental powers in the duties of his profession. That by reason of said injuries the professional business of plaintiff and its profits have been destroyed and he has lost and been deprived of large retainers, as well as gains and profits from fees and other remuneration and compensation usually received by lawyers in active practice.

"That said injuries have caused the plaintiff to suffer great and excruciating mental and physical pain and suffering.

"That the injuries aforesaid to the plaintiff were directly and

proximately caused by the said negligence of the defendants, and the plaintiff did not by his negligence contribute to said injuries, but said plaintiff used ordinary and reasonable care in travelling on and leaving said elevator, whereby the plaintiff brings this suit to recover damages for the injuries aforeseid."

The second count differed from the first only in charging "That the sudden dropping and ascent of said elevator as aforesaid was caused by the negligence and carelessness of the servant of the defendant who was running said elevator and in charge of its operation and the running of the same; that the injury of the plaintiff hereinafter set forth, was caused by the negligence and carelessness of said servant of defendant in operating and running said elevator, and a failure of the defendants to perform the duty it owed the plaintiff to provide a servant who would exercise ordinary and reasonable care in operating said elevator when carrying guests as passengers. That by reason of said negligence of the defendant in falling to have a servant who would exercise ordinary and reasonable care in operating said elevator, the plaintiff was seriously and permanently injured." This count did not charge any failure of duty to provide a properly constructed and equipped elevator.

The only exception is to the ruling upon the prayers, of which the plaintiff offered three all of which were granted, and the defendant offered nine, of which the first and second were rejected, and all the others were granted. The plaintiff's third prayer is in the usual form as to measure of damages, and no question is raised thereon, provided the case properly went to the jury. The plaintiff's second prayer recites the facts necessary to be found in his view to justify his recovery, and his first prayer defines the degree of care required in his transportation as "the highest degree of care and diligence practicable under the circumstances." These will be set out in full by the reporter. The defendant's first prayer sought to withdraw the case from the jury on the ground that there was no legally sufficient evidence tending to show that the injuries

of the plaintiff were occasioned by any negligence of defendant in failing to provide the elevator with proper machinery and appliances, nor by any negligence or carelessness in failing to provide a servant who would exercise ordinary and reasonable care in operating said elevator, nor by any negligence or carelessness of the servant in operating the same; and its second prayer sought to withdraw the case upon the ground that there was evidence legally sufficient to show that defendant had been guilty of any violation of any of the duties owed to the plaintiff as alleged in the declaration. All questions of contributory negligence were fully and fairly submitted by the defendant's granted prayers. The defendant excepted generally to the granting of all the plaintiff's prayers and to the rejection of its first and second prayers, and also excepted specially to the language of his second prayer "by reason of the negligence and carelessness on the part of the servant of defendant in operating the same," because there is no legally sufficient evidence in the case in regard thereto, and also to the language of the same prayer "said elevator by reason of the negligence and carelessness on the part of the servant of the defendant, suddenly descended," because there is no evidence legally sufficient to be submitted to the jury on the instruction. Both of which special exceptions were overruled. The defendants rejected prayers and special exceptions require an examination of all the testimony.

The plaintiff testified that he is an officer of the order of Heptasophs and that he had arranged with Mr. McCahan, the manager of the Belvedere Hotel, to serve for him on the evening of this occurrence, in a room upon the second floor of the hotel, a lunch for a number of visitors and guests of the order, to be paid for by him; this was paid to the hotel company by Mr. Tattersall, secretary of the order, and the amount repaid him by the plaintiff. While at lunch, he left the room, and took an elevator to the ground floor in company with Gov. Warfield one of the guests who was obliged to leave at an early hour. On returning to the elevator he thus details what occurred at the time of the accident. "I found the elevator

nearest the door waiting, and on entering it I told the elevator
boy to let me off at the second floor.    The boy started the
machinery and the elevator went up some little distance;  I
cannot say whether he reched the second floor or not, because
I did not see it; but the elevator was brought down some-
where about six inches, I should say, by the boy;  I was watch-
ing his hand on the lever, the left hand, until he reached the cen-
tre, when he reached out across where I was standing, unlatched
the door, and threw it back with his right hand in front of him,
and just as I was leaving the elevator with my body, reaching
out over into the hall, with my right foot stepping to the hall,
I heard a click, and like a flash the elevator went down, and
my weight still remaining on my left foot (it had not been
transferred to my right foot) I heard the click, and like a flash
the elevator went down, and the first blow I got was some-
where in the region of the spine; this hip was struck (indicat-
ing); the whole body was forced back towards the elevator
and I fell in on top of the elevator shaft; as I did so, I
screamed, "My God, do not kill me;" we went down some
distance, I take it possibly 12 or 14 feet, and as quick as a
flash the elevator shot up again and I was lying somewhat at an
angle on the roll of the elevator, kept there by the confines of
the shaft.    As soon as we came up, the elevator door being
still open, my body either slipped or rolled, and I caught the
door, and I again screamed and rolled out to the floor, and
lost sight of the elevator."    Upon further examination in chief,
he said the elevator had come to a full stop before the door
was opened and he attempted to step out.    On cross-exami-
nation, being asked to explain how he came to be upon the
top of the elevator he replied, "with the advancement of my
foot my body went outside of the elevator, and I was forced
back by the blow on the lower portion of my body as if some
one had struck me and knocked my feet in the air, and my
body fell on top of the elevator;" and when asked to explain
how he could remain in position on top of the elevator while
it descended towards the lower floor and then returned, as
described in his examination in chief he replied, "I remained

there because of the protection I got when the elevator passed down through the shaft; it held me there, but as soon as I came up out of the shaft to the open door I was released. The shaft was holding my body, and as soon as we came up my body yielded to the open door, and that's the time I left the elevator and it went on up." * * * "When I was struck by the elevator going down I was just simply rolled over on its top; and my body was just twirled as if some one with great power had seized me and thrown me right over."

Mr. Tattersall testified that a short time after the plaintiff left the lunch room with Gov. Warfield they heard a cry in the hall, "My God, do not kill me," and recognizing the voice as Mr. Bryan's, the party rushed out and found him on the floor of the hall, the door to the elevator shaft open, and the elevator not in sight.

Mr. John J. Hurst testified to the same effect, and in addition that in just a mere interim of time after the cry he heard a fall as if a body had dropped.

Dr. Chambers tertified at length to the severity and permanence of the injuries received.

John A. Klinefelter who was in charge of that elevator at the time of this occurrence testified for the defendant that he was then over 20 years of age, and had been in charge of an elevator before going to the Belvedere Hotel, at the Equitable Building. He said that the plaintiff after going to the outer door with Gov. Warfield came back and entered his elevator but did not say where he wished to get off. "I went up as far as the second floor and asked him if he wanted to get off there, and he looked at me and kind of nodded his head, so when I got to the second floor, he kind of reached out his hand to touch the door, and I said to him, Take your hand off that door, I am supposed to open the door. So I got up very near, about six inches from the second floor and he reached out again, and I had the handle of the door when he got hold of my hand, when finally the catch opened and he pushed my hand away, and the door flew open and he stepped out. He stepped out with his right foot before I had the ele-

vator stopped¿ He started to get out before the elevator stopped and he was squeezed between the elevator and the wall; the elevator did not fall at all; while he was getting out I did not move the lever at all to make the elevator descend. The elevator was still moving slowly up. I closed the door and went down to the office floor and sent two bell boys for a doctor. * * * Mr. Bryan was not thrown upon the top of the elevator * * * I am positive I closed the elevator door when I went down to the office floor to call the doctor, and when I returned to the second floor Mr. Bryan was lying on the floor * * * no one was near him at that time. * * * I do not know how he was struck. I was as scared as he was.''

The witness was asked if he did not call at Mr. Bryan's residence during June or July, 1904, and state to Mrs. Bryan that he wished to see Mr. Bryan, and if Mrs. Bryan did not tell him he could not see Mr. Bryan. To which he answered he did not call there and had never seen Mrs. Bryan. Mrs. Bryan in rebuttal said he did call at her residence in June, 1904, asking to see Mr. Bryan, and that she sent him to Mr. Bryan's office to see his partner, Mr. Tolson.

He was also asked if he did not about the same time, June or July, 1904, at Mr. Bryan's residence, tell him that he never touched the door of the elevator or made any attempt to get off until the elevator was stopped, and that when the elevator moved he, Klinefelter lost his head, and did not know what he did do; and also if Mr. Bryan did not then tell him he did not want any statement from him about the accident, but if he wished to make one, to see Mr. Tolson at 406 St. Paul street, all of which he positively denied.

Mr. Bryan in rebuttal testified that Klinefelter did call on him at his residence in the latter part of June, 1904, gave him his name as Klinefelter, and said he called to say to him that he was not in fault, that he Klinefelter, lost his head, and that the statement he made to the newspapers was not correct.

He was also asked if he did not call at the office of Bryan & Tolson in June or July, 1904, and tell Mr. Tolson that he

had signed a statement in December, 1903, to the effect that Mr. Bryan had opened the elevator door himself, and that it was his fault he was injured, but that this statement was not true and he had signed it because he was afraid Mr. McCahan would discharge him, also if he did not at that same time say to Mr. Tolson that when Mr. Bryan was hurt and fell on top of the elevator, that he thought a hat which fell down the elevator shaft was Mr. Bryan's head and that he was so excited he moved the elevator after it went down, and sent it up and that Mr. Bryan rolled off the top of the elevator at the second floor, and he went on up the shaft with the elevator, also if he did not at the same time and place state that the Hotel Company had trouble with this same elevator before the accident while putting furniture in the hotel—also that the Hotel Company had discharged him and he was going to Pittsburg, and that he had called on Mr. Bryan and told him he had not been at fault, all of which he positively denied, stating he had never seen Mr. Tolson anywhere.

Mr. Tolson in rebuttal testified that Klinefelter did at the time and place named make each of the statements above set forth.    Emil Schuman testified for defendant, that he had charge of the private dining rooms on the second floor the evening of the accident, and started to go down for some cigars and went to the elevator the door of which was closed and gave the signal, but it was sometime before it came up ; that he turned towards Eager street, and all at once the door opened and he found Mr. Bryan on the floor ; that he looked at the elevator and saw it was between three and four inches from the second floor ; that Mr. Bryan's cries brought people from the party and Mr. Bryan was carried to a room in the rear.    John J. Hunt testified for defendant that he was the engineer in charge of the machinery of the Hotel Belvedere and was on duty the night of this accident ; that he had twenty-five years experience as an engineer, and understood the operation of a plunger elevator such as that was ; that he observed the movement of that elevator that night, and saw nothing strange or unusual ; that if there had been a sudden

fall of the elevator by reason of the reversal of the valve, he would at once have seen and stopped it ; that he was there to watch the operation of the machinery ; that the machinery, appliances and equipment of this elevator, and the motive power were all sound and first class in every particular, that it had run smoothly before and ever since the accident, and had never given a moment's trouble.

This is the substance and the sum of all the testimony in the case.

The uncontradicted evidence of Mr. Hunt, the defendant's engineer, is that that elevator with its motive power, equipment, and appliances were all sound and first class in every particular ; that he was on duty at the time of the accident, and that he observed nothing irregular or unusual in its operation on that evening.    Proof of the alleged statement of Klinefelter to Mr. Tolson that this elevator had given trouble before the accident, and that while carrying furniture in it before the hotel was opened to the public, furniture had been caught in it, though denied by him, was admissible to contradict and discredit him, but not for the purpose of proving the fact that the elevator was not properly constructed, equipped or main-tained, and we are therefore of opinion that there was no legally sufficient evidence tending to prove negligence of the defendant in failing to provide the elevator with proper ma-chinery and appliances as alleged in the first count of the dec-laration.    But it must be at once apparent we think from the summary of the testimony we have given, that the Court would not have been warranted in withdrawing the case from the jury upon the testimony relating to the second count, charging negligence of defendant in failing to provide a servant who would and did exercise ordinary and reasonable care in operating said elevator.    The most perfect machinery equip-ment and appliances may be more dangerous under the con-trol of an incompetent, reckless or careless person than de-fectively constructed or equipped machinery of the same character, when managed by a prudent, careful and cautious man.

Mr. Bryan's testimony as to what occurred at the time of the accident, if believed, must establish either the incompetency or gross carelessness of Klinefelter, for which the defendant is responsible, and the credibility and weight of Mr. Bryan's testimony, as well as that of Klinefelter and of the several witnesses by whom he was contradicted could only be determined by the jury.    This is not a case like *Benedict* v. *Potts,* 88 Md. 55, where there was no *nexus* between the negligence alleged and the injury sued for.    Here, if Mr. Byran's testimony is accepted, there is shown an obvious relation of cause and effect between the negligence of Klinefelter in starting the elevator when he was in the act of leaving it, and the injuries which he received in leaving.    The negligence charged in the second count as well as that charged in the first count is expressly covered by the defendant's first prayer, and its second prayer requires the Court to say that there is no legally sufficient evidence of violation of *any* duty owed the plaintiff, that is, of any negligence whatever on the defendant's part.    There was no error therefore in rejecting the defendant's first and second prayers.

For the same reason there was no error in overruling the defendant's special exceptions to the plaintiff's second prayer, which was assailed on the ground, first, that there was no legally sufficient evidence of "negligence on the part of the servant of the defendant in operating the elevator;" and second, because there was no legally sufficient evidence that "said elevator by reason of the negligence of the servant of defendant in operating the same, suddenly descended."    Mr. Bryan's testimony bore directly and pointedly upon the fact that the elevator did suddenly descend when he was in the act of leaving it, and that this was caused by Klinefelter's negligence in starting it at that time.

It follows also from what we have said, that there was no error in granting the plaintiff's second prayer, which required the jury to find that the defendant was negligent in the operation of the elevator, that this negligence was the cause of the plaintiff's injuries, and that the plaintiff was in the exercise

of due care, as this prayer went only to the plaintiff's right of recovery without defining the degree of care required of the defendant in operating the elevator.    If the plaintiff was entitled to recover at all, the third prayer was properly granted, as it merely gave the measure of damages repeatedly approved in such cases.

The only remaining question is the degree of care required in the operation of a passenger elevator under the circumstances of this case.    This is raised by the plaintiff's first prayer, and never having been distinctly raised and decided in this State, it is a matter for careful consideration.

The distinguished counsel of the appellant contended both in his brief and in his oral argument that the ruling of the lower Court upon this prayer was in conflict with the decisions of this Court in *Peoples Bank* v. *Morgolofski*, 75 Md. 433, and in *Wise* v. *Ackerman*, 76 Md. 375; but we think it will be seen upon a careful consideration of the facts of these cases, and especially of the language of the Court in the latter case, that neither of them can be declared to be in conflict with the rule sought to be applied here.    In the Morgolofski case the elevator was used for freight and by the working people of the tenants of the building who daily were taken down and brought up on it.    The plaintiff was one of these persons, and having heard the elevator stop at the floor at which he was, went shortly after to take the elevator, and the approach to the door being quite dark he did not observe that the elevator was not standing there, though the door was open, and he fell into the shaft and was injured.    In his prayer, after reciting the facts necessary to be found he asked the Court to say that if he exercised reasonable care and caution at the time, and his injury was occasioned by the want of ordinary care on the part of the defendant, that he was entitled to recover, and the Court so ruled, and this ruling was affirmed on appeal. · The trial Court is not bound to go beyond the request of the prayer offered, and grant stronger law than is asked, though it might be able to do so if asked.    The prayer granted in that case is not in fact in conflict with the instruction now

under consideration, for if it should be conceded that the
highest degree of care were required under the circumstances
of any case, the want of ordinary care would *a fortiori,*
under the same circumstances render the defendant liable; and
where the plaintiff himself asks such instruction, neither he
nor the defendant could be held to be injured by the action
of the Court in granting it.    The question before us was not
considered by the Court nor by counsel, and we cannot re-
gard that case as consciously or purposely committing the
Court to that limitation of the liability of owners and opera-
tors of passenger elevators.

In *Wise* v. *Ackerman* the elevator in question was used in
the same manner as in the Morgolofski case, and the plaintiff
was riding on it in the line of his employment as defendant's
servant when injured by some boards allowed to project into
the elevator shaft. As in the former case he limited by his own
prayer, the degree of care required of the defendant to *ordi-
nary care*, and that prayer was granted, and the ruling thereon
was affirmed without any discussion upon that point.    In the
course of the opinion in that case, it was said by the learned
and careful Judge who spoke for the Court, ''There is no
doubt that when an elevator is erected in a factory or ware-
house and is intended to be used only for the purpose of car-
rying goods and materials from one part of the building to
another, and the employees in the establishment, familiar with
the construction and operation of the elevator, and the pur-
pose of its construction, ride thereon, under a mere implied
license for their own pleasure or convenience, they must be
taken to accept whatever risk may be incident to such con-
struction and operation; *and in such case they can only require
of the defendant the use of ordinary care either in the construc-
tion or operation of the machine.*    But an elevator in many re-
spects is a dangerous machine, and though it may be primarily
intended only as a freight elevator, yet, if the employees, in
the course of their employment, are authorized or directed to
use the elevator as a means of *personal transportation*, the em-
ployer, controlling the operation of the elevator is required to

exercise *great care* and *caution* both in the construction and operation of the machine, so as to render it as free from danger as *careful foresight and precaution* may reasonably dictate. *Nothing short of this* will excuse the defendant, unless it appears that the plaintiff himself, or the party under whom the plaintiff is allowed to claim, was guilty of direct contributory negligence to the production of the disaster. *Bank* v. *Morgolofski*, 75 Md. 432; *Treadwell* v. *Whittier*, 80 Cal. 575. The last case referred to contains quite an exhaustive examination of the whole subject; and while most of the propositions there maintained are unquestionable, there are some to which we are not called upon *by the requirements of this case* to accede." Here it is distinctly stated that where one rides under a mere license upon an elevator primarily designed for freight, only *ordinary care* can be required in its operation, but when an elevator is used, under due authority, *as a means of personal transportation, great care and caution is required, and nothing less will suffice to protect the operator.* Ordinary care is not great care, and this case therefore is authority for holding that where an elevator is used as a means of personal transportation a *higher* degree of care than *ordinary* care is required in its operation. Whether the *highest* degree of care is required in such case would seem to be the only question left open for consideration under the language of that decision, and that question will now be considered.

There appears to be an entire concurrence among the standard text writers upon this subject in supporting the instruction given in this case. *Shearman and Redfield on Negligence* state the law thus: "For the same reason—a regard for human life—that common carriers are required to exercise the highest degree of care for the safety of their passengers, irrespective of any contract of carriage, a like degree of care is exacted of a landlord in transporting persons by elevator between the several floors of his building. He is therefore bound to use the greatest care, not only in providing, safe and suitable cars, appliances, and machinery for control, but also in managing these means of transportation." Vol. 2, sec. 719A. The

passage cited from this author, sec. 719 in *Morgolofski's case*, will be found to refer to elevator *shafts* left open as places of danger to those engaged near them, and not to the operation of the elevator itself as a means of transportation for those authorized to use it.

The author of the article of carriers in The Cyclopedia of Law and Procedure, JUSTICE McCLAIN of the Supreme Court of Iowa, under the head of elevators says: "While the owner of a passenger elevator operated in a business building for carrying persons up and down may not be a carrier of passengers in the sense that he is *bound* to serve the public yet his duty as to protecting the passengers in his elevator, is the same and he is bound to do all that human care, vigilance and foresight can reasonably suggest under the circumstances to guard against accidents and injuries resulting from the mode of conveyance," 6 *Cyc.* 596. In 10 *Amer. & Eng. Ency. of Law*, 946, it is said: "A carrier by elevator is not an insurer, but is required to exercise the highest decree of care in everything calculated to insure the safety of his passengers. There is no distinction in law between the duties and liabilities of a carrier by elevator and one by railroad. * * * The proprietor of an elevator run for the use of the tenants of an office building and their visitors, is a carrier of passengers for hire. His compensation is the rental paid him by the tenant for which he undertakes to carry him and his visitors by elevator. The same is true of a proprietor or operator of an elevator in a hotel or apartment house. * * * The general rule is quite as stringent when applied to the vertical carriage of passengers by the comparatively novel and perilous means of the elevator."

The same exact doctrine is stated by Ray in his work on Negligence title, carriers of passengers section 96, page 309, where he says: "Such responsibility attaches to all persons engaged in employments where human beings submit their bodies to their control, by which their lives or limbs are put at hazard." And Mr. Webb in his recent work on Elevators says: "There is no employment where the law demands a

higher degree of care than in the construction and operation of passenger elevators." *Webb on Elevators*, sec. 7.

Thompson in his law of Negligence, page 980, says: "Modern judicial authority assimilates the legal *status* of the owners or occupiers of buildings who construct or operate passenger elevators therein, whereby persons are conveyed from one story to another to that of a ·common carrier of passengers and imposes upon such persons the same extraordinary obligation of care and skill. The carrier in such case is the bailee, so to speak, of human beings and has their lives in his custody."

We have been referred to no text writer who holds otherwise, and the law thus laid down is sustained by the great weight of authority in the adjudicated cases. The appellee in his brief has cited decisions in accord with these views from the Courts of last resort in California, Illinois, Kentucky, Minnesota, Missouri, Tennessee, Pennsylvania, Alabama and Wisconsin and Washington and from· the Circuit Court of the U. S. for the Southern District of Ohio. For convenience of reference these cases are given herein by title and volume.

*Treadwell* v. *Whittier*, 80 Cal. 574; *Hartford Deposit Co.* v. *Sollitt*, 172 Ill. 222; *Springer* v. *Ford*, 189 Ill. 430; *Kentucky Hotel Co.* v. *Camp,* 97 Ky. 424; *Goodsell* v. *Taylor*, 41 Minn. 207; *Lucket* v. *Century Building Co.*, 177 Mo. 627; *Southern Building Assn.* v. *Dawson*, 97 Tenn. 367; *Fox* v. *Philadelphia*, 208 Pa. 127; *Morgan* v. *Saks*, 38 Southern Rep. 848; *Orberdorfer* v. *Papps*, 100 Wis. 573, and *Mitchell* v. *Marker*, reported in 25 L. R. A. 33, decided in the Circuit Court of the U. S. for the Southern District of Ohio.

The California case *Treadwell* v. *Whittier*, 80 Cal. 575, is a leading case upon this subject. In that case the defendant asked the following instruction: "If the accident in question was caused by a defect or flaw in one of the piston rods of the elevator apparatus, which defect or flaw was not discoverable on an ordinary, reasonable and careful examination, then your verdict should be for the defendants." The Court refused this instruction and modified it so as to read, "was not discover-

able on a reasonable and careful examination according to the best known tests reasonably practicable;" and this modified instruction was held correct on appeal.    After discussing the grounds upon which common carriers of passengers are held to the highest decree of care the Court said "the same degree of responsibility must attach to one controlling or running an elevator.    Persons who are lifted by elevators are subjected to great risks of life and limb.    They are hoisted vertically and are unable, in case of the breaking of the machinery to help themselves.    The person running such elevator must be held to undertake to raise such persons safely, as far as human care and foresight will go."

It was argued for the appellant that when this Court on *Wise* v. *Ackerman, supra,* said in approving *Treadwell* v. *Whittier*, that there were *some propositions* there maintained which they were not called on by the requirements of the case before it to accede to—it withheld its approval from the principal point there decided.    But we cannot make that deduction. The Court expressly said *most* of the propositions there maintained were sound, and only refrained from expressing any opinion upon *any* of those not involved in the instructions under review in that case, which as we have already shown did not raise the question presented in the California case and in this case.    If the purpose of the learned Judge who wrote that opinion had been to commit the Court to a disspproval of the principal point in the case which he cited to sustain him, it is safe to say that he would not have left it to inference, but would have spoken in plain and unambiguous language.    It would extend this opinion beyond the limits of patience if we should attempt to refer to all the cases we have cited, but we have carefully examined them all and they all fully sustain the doctrine of the case at bar.    We have been referred to but three Supreme Courts of the States which hold a different view—*Griffin* v. *Manice*, 166 N. Y. 188; *Burgess* v. *Stowe*, 134 Mich. 211, and *Edwards* v. *Mfg. Building Co.* (R. I.), 61 At. Rep. 646.

The New York case is the leading case of the three, and

states the view from the standpoint taken clearly and forcibly, but the reasoning fails to convince of the soundness of that view.    JUDGE CULLEN said in the course of his opinion, "Doubtless no distinction can be drawn between vertical transportation and horizontal transportation.    If the relationship between the parties and the character of the common carrier are the same in both cases there is no reason why the same measure of diligence should not be exacted in the one case as in the other.    But the defendant was not a *common* carrier and received no compensation, at least directly, for carrying persons from one floor to another.    The right of any person to be carried in the elevator was based on the implied invitation to enter which the defendant as owner of the property (an office building) is deemed to have extended to all who might have business on the premises.    To such persons the law imposed upon the occupant or owner the duty of seeing that the premises were in a reasonably safe condition for access and entering.    If the charge of the trial Court is to be sustained we must hold that the maintenance and operation of an elevator form an exception to the general standard of care imposed by the law upon the owners and occupants of real property, and we see no reason for making this exception." With great respect for that eminent Court this reasoning seems to us to lay out of view the true ground upon which all the cases sustain the rule laid down in the lower Court.    The liability of the *common* carrier is not imposed because he is a common carrier, but because he is a *carrier* of passengers, because as JUDGE COOLEY states it in *Cooley on Torts,* 2 ed. 768 and 769, "there are committed to his charge for the time the lives and safety of persons of all ages and of all degrees of ability of self-protection, and as the slightest failure of watchfulness may be destructive of life or limb, it is reasonable to require of him the most perfect care of prudent and cautious men as far as human foresight and care can reasonably go." The liability is not imposed upon the owner or occupant of real property as such, but irrespective of such ownership and occupancy and because he is engaged in the undertaking o

running an elevator *as a means of personal transportation*, which JUDGE ALVEY has said in *Wise* v. *Ackerman* requires a *higher* decree of care than ordinary care.

In *Fox* v. *Philadelphia*, 208 Pa. 127, the Court reviewed and declined to follow the case of *Griffeu and Manice* and said, "The foundation of the rule for the protection of a passenger is in the undertaking of the common carrier which is to carry safely; but another reason for it is, that when the passenger commits himself to the carrier he does so in ignorance of the machinery and appliances (as well as of their defects) used in connection with the means of transportation, and becomes a passive and helpless creature in the hands of the transportation company and its agents. For the same season, this rule should be extended to those who operate elevators for carrying passengers from one story of a building to another. When they undertake to carry they undertake to carry safely. If it is not their express agreement to do so, it is surely an implied one, and the condition of a passenger caged in a suspended car, is one not only of utter ignorance of what has been done or ought to be done for his safety, but of absolute passiveness and pitiable helplessness when confronted with danger against which human knowledge, skill and foresight ought to have guarded; and the rule has been so extended." The view thus expressed is in accord with our own and we think it well grounded both in reason and authority. The judgment will therefore be affirmed.

> *Judgment affirmed with costs to the ap-*
> *pellee above aud below.*

(Decided June 15th, 1906.)