## OWNERS' REALTY COMPANY v. JULIA MAY RICHARDSON.

[No. 90, October Term, 1929.]

*Decided January 15th, 1930.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, PARKE, and SLOAN, JJ.

*Walter C. Mylander,* with whom was *Nathan Patz* on the brief, for the appellant.

*Herbert L. Grymes,* for the appellee.

PARKE, J., delivered the opinion of the Court.

The Owners' Realty Company of Baltimore City, a corporation, is the owner of an apartment house of six stories in Baltimore City, known as the Brexton Apartments. The employer of Julia May Richardson, a stenographer, was con-

fined to his apartment on the fifth floor of the building on November 24th, 1924, and telephoned her to come to take the dictation of some business letters. Miss Richardson had never been in the Brexton Apartments, so he informed her that she could get to his apartment by climbing a stairway or using an elevator, whose management he explained.

The entrance to the Brexton Apartments is into a hall, from which access to the several stories is afforded by a stairway and an elevator. The elevator is not run by an attendant, nor under any supervision, but by those desiring to go to or from the six stories of the house. The entrance to the elevator from every floor is through a solid outer sliding door, which is closed, and cannot be opened except when the elevator is at the level of the particular floor; and then through a second door, which is on the front of the elevator and must be opened to enter or leave it. The elevator ascends or descends automatically, either to the floor from which a person intends to enter, or to the floor desired by the occupant of the elevator, by pressing a button. In the case of the person desiring to take the elevator, the button is to the side of the outer door; and if the person is an occupant, he presses a button in the elevator. It was in connection with the opening of the second door that Miss Richardson sustained an injury to her finger, for which she brought suit and recovered a judgment against the owner.

The testimony on the record is conflicting. The plaintiff was alone when the accident happened, and there is no one else to testify to what did occur, but her description of the physical conditions at the time and the other testimony given in support of her action are contradicted by the witnesses for the defense in such material respects that not only was the question of veracity sharply raised, but the right of recovery was challenged. However, disputes of fact are for the resolution of the jury, and they determined them against the defendant. There is no exception to evidence, and the granted prayers of the plaintiff and of the defendant submitted every defense raised and in a form of which the defendant cannot complain. If there be reversible error, it can be only because

of the refusal of the judge at *nisi prius* to grant the prayers of the defendant that were a demurrer to the legal sufficiency of the evidence. In passing on that question this tribunal has nothing to do with the weight of the evidence on disputed facts, but all the testimony supporting plaintiff's demand must be accepted as true on a demurrer to the evidence. So, the province of this court is to accept the testimony in support of the action, and to decide if there be legally sufficient evidence to carry the case to the jury for a verdict.

The testimony on the part of the plaintiff tended to show that she walked into the well lighted hall of the apartment about noon, and that, in addition to its being the first time she had been in the building, the plaintiff had never used a similar elevator. She shoved the sliding solid first door aside, and the second door or gate of the elevator confronted her, and barred her entrance into the elevator. The door or gate was not solid, but was built of transverse metal laths, which were pivoted where they crossed, so as to form, with an outer upright piece of metal, a lattice, which could be closed by pushing in the outer upright piece, causing the crossed laths to move on their pivots to an approximately vertical position, and which could be opened by moving out the upright bar, which would then extend the door or gate to its greatest width. When thus extended, the collapsible door or gate closed the entrance into the elevator, and, when pushed together, the collapsed or contracted door or gate opened an entrance into the elevator. The effect of opening the door or gate was to bring the laths together as scissor blades.

The plaintiff's testimony is that there was a small knob, about an inch in diameter, on the upright piece, which was so close to the upright that, when she took hold of the knob to release the latch and push open the door, her fingers, in the absence of any guard or protective device, necessarily extended between the upright and the laths. She testified that she did not know that the door or gate would collapse or close when she opened it, and her further testimony was, in effect, that she thought it would take some effort on her part to open

the door, but that she had barely touched the knob when the door slammed back very rapidly, startling her, and catching her finger between the laths with such force as to swing her around as they closed with the sudden and quick collapsing of the door. There is, also, testimony on the part of the plaintiff that on January 10th, 1924, the employer of the plaintiff had complained about the rapidity with which the door closed.

The defendant was engaged in the carriage of its tenants and their servants and visitors by means of an automatic elevator, which was operated by those using it without any assistance, direction, or supervision by the defendant. It was an economical method to cast the burden of its operation upon those having occasion to go to and from the several apartments of the six storied building, but the knowledge of the defendant that it would be run by a number of persons, who would represent a wide range of age, experience, intelligence, and capacity, cast upon the defendant all the more care in the selection and maintenance of the mechanical device which was adopted for this general service. The rule approved by this court is that the landlord engaged in transporting passengers by elevators must exercise great care not only in their operation but in providing safe and suitable equipment. It is a rule which has its sanction in sound public policy, which exacts a high degree of care where security of person and life is frequently involved, under circumstances in which the carrier is in control of the movement or of the equipment. *Belvedere Bldg. Co. v. Bryan,* 103 Md. 514, 534-540; *Shearman & Redfield on Negligence* (6th Ed.), sec. 719a and notes; *Cooley on Torts* (3rd Ed.), p. 1378.

The smallness of the knob and its closeness to the upright would naturally cause the fingers of the hand of the user to project and be caught and injured between the closing laths of the collapsible door, provided their movement was so rapid as not to afford a warning and opportunity for the user to let go the knob and withdraw the fingers in time to avoid injury.

372

The user had no other way to loose the latch and open the door, and could not be held to anticipate, when unaware of the fact and in the absence of any circumstance to put her on notice, that the door or gate would contract suddenly and violently. While the plaintiff was ignorant of this latent peril, and was not on guard for such an unreasonable and dangerous contingency, the defendant, according to plaintiff's testimony, had been given warning of this defect in the operation of the door or gate. The defendant did not offer evidence to show that the alleged dangerous defect had been remedied after notice, but denied both the notice and the defect, and introduced testimony to show there was no knob, but a handle, to be safely clasped with a closed hand. The case was, therefore, one of fact for the jury, as there is testimony which, if believed, tends to prove that the defendant did not exercise the highest care consistent with the practical operation of the business in which it was engaged to have the elevator fit for such use. Finding no reversible error the judgment must be affirmed. *Supra.* Compare *People's Bank v. Morgolofski,* 75 Md. 432-445; *Fulton Bldg. Co. v. Stichel,* 135 Md. 542, 544-550.

*Judgment affirmed, with costs.*