## O'NEILL & COMPANY *v.* HAZEL IRENE CRUMMITT
[No. 14, January Term, 1937.]

54

*Decided March 17th, 1937.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Robert E. Coughlan, Jr.,* for the appellant.

*Charles Ruzicka* and *J. B. Randol Carroll,* with whom were *Allen A. Davis, Jr.,* and *Brown & Brune,* on the brief, for the appellee.

JOHNSON, J., delivered the opinion of the Court.

This is an appeal by O'Neill & Company from a judgment rendered against it by the Superior Court of Balti-

more City in favor of Hazel Irene Crummitt, who brought suit to recover damages for personal injuries sustained by her and allegedly resulting from the negligence and carelessness of the defendant's agents and servants while plaintiff was shopping in its department store in Baltimore City.

The declaration contains two counts, the first of which alleges that the defendant owned and operated a department store and general merchandise business establishment at the southwest corner of Charles and Lexington Streets, to which the public was invited for the purpose of purchasing merchandise, and on January 23rd, 1935, at 11:15 a. m. while the plaintiff was in said establishment at the invitation of the defendant for the purpose of making purchases, and leaving an elevator at the third floor, which elevator defendant operated for convenience of its customers, she was caused to slip and fall, due to the negligent and careless operation of said elevator by defendant's agents and servants, in consequence of which she was seriously and permanently injured, and such injuries were caused solely by the negligence of the defendant, its agents and servants, without any negligence on her part directly contributing thereto.

The second count is similar to the first, except that it attributes the fall which caused plaintiff's injuries to the negligence of the defendant, its agents and servants, in allowing the third floor of its store, a part of which was the elevator landing, to "remain in a slippery and dangerous condition because of a foreign substance thereon." The plaintiff's bill of particulars states (a) that, as the plaintiff was leaving the elevator, defendant's agent and servant allowed it to become in motion; (b) that such agent and servant allowed the floor of the elevator to be above the store floor level a certain distance; that the exact nature of the foreign substance upon the floor was unknown to the plaintiff, but solely within the knowledge of the defendant, its agents and servants. During the course of the trial nine exceptions were reserved by appellant to the rulings of the trial

court. The first, second, third, fifth, sixth, seventh, and eighth of these relate to rulings upon evidence, the fourth to the court's action in overruling appellant's motion for the withdrawal of a juror and declaring a mistrial, while the ninth pertains to the prayers.

The testimony offered by the plaintiff would have enabled the jury to find that on the morning of January 23rd, 1935, accompanied by her twelve year old daughter, she visited the store of appellant for the purpose of making certain purchases. In it were two adjoining elevators, known as Nos. 1 and 2, which appellant operated for the convenience of its customers who desired to shop upon the second and third floors of the building. She and the daughter, after remaining upon the first floor a short while, entered the No. 2 elevator and rode to the third floor in order to shop at the children's department. This elevator was stopped by the attendant at the third floor, the inside and outside doors were opened and the daughter stepped to the floor safely. However, at that time the floor of the elevator was approximately four inches above the level of the third floor of the building and, as appellee lifted her right foot to step to the floor of the building, the elevator dropped suddenly, causing her to lose her balance, and when she touched the floor she slipped upon a dirty, greasy substance and fell in such manner that the lower part of her back struck the elevator. Upon the third floor, immediately in front of where the elevator stopped to discharge passengers, there was a strip of linoleum five feet wide, and according to her the dirty grease was upon this. Being questioned further about this substance, she testified:

"Q. You have testified about some dirty—I don't remember the term—dirty, greasy substance? Did any of that substance get on any part of your clothes? A. Well, that is the reason I knew it was dirty and it was greasy because when my hand—I went to catch myself, my hand slid like this (indicating). I had my glove— it was a kid glove; it was half off; it was hanging, and my hand was full of grease and dirt. It was this hand;

it just slid like that (indicating), and when I slid my back hit the edge of the elevator. Q. Did any of that dirty, greasy substance get on any of your other clothes? A. It was all over my coat and it was all over my stockings. Q. Where your hand skidded, or slid, did it show a mark of any kind? A. Where this hand went it just left a lighter scrape. Q. Can you tell the court and jury the color of this greasy substance? A. It was either a very dark green or black; very dark. The linoleum and the color of the substance I couldn't tell; it was just grease. Q. Before you fell did you notice the condition of this floor? A. I never noticed it. Q. When did you first discover that it was oily and greasy, or greasy substance? A. I never discovered it until I was down on the floor. My hand slid and it left that streak just where my hand had gone, where I tried to catch myself. Q. Where was this substance? Only in one spot on the linoleum in front of this elevator? A. It was covered all around where I was. Q. (By Mr. Ruzicka) Will you describe to the court and jury the general condition of the linoleum in front of this elevator? A. The linoleum is all across the elevator where you get off. I had looked naturally as far as I could see; you couldn't tell it was on there until after you was down in it and then it was greasy from my hand. This is the way I noticed it."

After falling appellee was picked up and some one furnished her a chair and gave her a glass of water. Subsequently, with her daughter and a lady attendant, she remained for a short time in the rest room, and after removing the grease from her hands she and the daughter found one of appellant's salesladies and made purchases, later going downstairs and riding home in a cab. From the time of her fall she had pains in her back and on arrival at home was compelled to lie down. The following morning she went about her housework until 10 o'clock, when the pain in her back returned in very severe form, so much so that she was unable to move. Dr. Hearn was called and administered to her. The following morning it took her an hour and a half

to get out of bed because of pain in her lower spine and right limb, and then Dr. Alessi was called. After giving her a pill, and two hypodermic injections which failed to relieve her, he was compelled to administer chloroform in order to put her to bed. Dr. Alessi called in Dr. Barratt as consultant, and X-rays were made which confirmed their previous diagnosis to the effect that she had sustained a fracture of the little process of the fifth lumbar vertebra and a fracture of the right transverse process of that vertebra. While there was no displacement of the vertebra and the fracture at the time of the trial was apparently healed, its effect was to interfere seriously with the function of the muscles and nerves around the spine and cause, at that point, the muscles to assume an abnormal position from those on the opposite side. At the time of the trial her condition had not materially improved, was not likely to improve further, and she was compelled to wear an orthopedic corset to support her back. Prior to these injuries her physical condition was good. Some employees of defendant denied there was any greasy substance upon the landing floor in front of the elevator, and others testified that the outer elevator door could not be opened unless the elevator floor was level with the landing floor, and the operator of the elevator at the time plaintiff was injured denied any knowledge that she had fallen. Its elevator dispatcher did testify that around 11 o'clock on the day in question he observed a lady sitting on the floor with one or two ladies around her; that she was four or five feet in front of the elevator on the third floor, and after being assisted in arising she told him she was not hurt, but he could not identify her as being appellee. However, appellant in its brief and in oral argument before this court admitted appellee had fallen, although denying the fall was in any sense attributable to the negligence of its agents. Near the conclusion of the trial in the lower court it was agreed between respective counsel, with the approval of the court, that the jury should inspect elevator No. 2 and the linoleum in front of the

elevator. Such inspection, according to the undisputed testimony, revealed that the outer elevator door could be opened with the elevator floor approximately four inches above or below the landing floor. There was further testimony to the effect that, with both doors open, the elevator could have been caused to drop by manipulation of the operator.

We have felt it advisable to make these references to the evidence favoring appellee's contentions before discussing the prayers. At the outset the inquiry presented concerns the status of appellee at the time she was injured, for by this must be measured the degree of care which appellant owed her. She was there by implied invitation to shop and must in any event be classed as an invitee. In such a case it became the duty of the owner of the premises to be sure that she was not invited into danger, and it was bound to exercise ordinary care to render its premises reasonably safe for the visit. *Cooley on Torts* (4th Ed.) sec. 440; 20 *R. C. L., Negligence,* pars. 51 and 52; 45 *C. J., Negligence,* secs. 232 to 237, inclusive; *Am. L. Inst., Restatement of Law of Torts,* p. 942; *Hochschild, Kohn & Co. v. Murdoch,* 154 Md. 575, 141 A. 905; *Dickey v. Hochschild, Kohn & Co.,* 157 Md. 448, 146 A. 282; *Riganis v. Mottu,* 156 Md. 340, 144 A. 355; *Fulton Bldg. Co. v. Stichel,* 135 Md. 542, 109 A. 434; *Bethlehem Steel Co., v. Variety Iron & Steel Co.,* 139 Md. 313, 115 A. 59.

Many authorities hold that one operating a passenger elevator is a common carrier, and the rule seems almost universal that the degree of care due by the owner of a passenger elevator to those who are expressly or impliedly invited to ride therein is similar to that which a common carrier owes its passengers. The rule is stated in 9 *R. C. L.,* p. 1253, par. 19, as follows: "As is stated above, in many jurisdictions the carrier of a person by elevator is required to exercise the highest degree of care and diligence to prevent injury to such person, which rule, to a certain extent, is based upon the analogy between the carriage of persons by a railroad and the

carriage by an elevator. * * * " See, also, *Cooley on Torts* (4th Ed.) par. 469; *Belvedere Bldg. Co. v. Bryan,* 103 Md. 514, 64 A. 44, 49, and authorities there cited; *Monahan v. Equitable Life Ins. Co.* (Iowa) 156 N. W. 994; *Goldenberg Co. v. Schicht,* 65 App. D. C. 336, 83 Fed. (2nd) 593; *Mitchell v. Marker* (C. C. A.) 62 Fed. 139; *Webb on Elevators,* secs. 3 to 9, inclusive. In *Belvedere Building Co. v. Bryan, supra,* this court held that the owner or operator of a passenger elevator was bound to exercise the highest degree of care and diligence practicable under the circumstances, to guard against injuries to persons riding in such elevator. In view of that decision the question under consideration cannot be regarded as an open one in this state.

We are of the opinion that the evidence offered to sustain the contentions of appellee was sufficient to require its submission to the jury under both counts of the declaration. Appellant's A prayer sought an instruction that there was no evidence in the case legally sufficient to entitle plaintiff to recover under the first count of the declaration, and the verdict of the jury must be for defendant, while its B prayer was similar in form, except it was made applicable to the second count of the declaration. In view of what we have said, it follows that both of these prayers were properly rejected, and this likewise applies to its C prayer, by which an instruction was sought that there was no legally sufficient evidence to entitle the plaintiff to recover under the second count. And this ruling as to the C prayer would necessarily result under the views which we entertain relative to the degree of care which appellant owed the plaintiff. She testified that the linoleum covering the elevator landing on the third floor had upon it, all around where she fell, a dark, greasy, substance that caused her to slip and strike the elevator. True, several employees of appellant who viewed the linoleum testified that no such substance was upon it, and that it was in its usual condition, but the weight and credibility of this testimony was for the jury. Certainly we do not feel that it can

be said, as a matter of law, that appellant, whose duty it was to exercise the highest degree of care and diligence practical under the circumstances for the safety of appellee, has fulfilled such duty by permitting its elevator landing, where it discharged passengers, to be in the condition described by the plaintiff, for obviously her status as a passenger continued while leaving the elevator and until she had been landed safely. *S. S. Kresge Co. v. McCallion* (C. C. A.) 58 Fed. (2nd) 931. See, also, annotation, 96 *A. L. R.* pp. 731 to 735. And this is likewise applicable to the evidence in the case pertaining to appellee's right to recover under the first count, for the carrier cannot discharge its duty to the passenger by causing the elevator to drop, thereby throwing her to the floor, while she is leaving it by implied invitation of the operator.

We have examined the prayers granted at the request of the plaintiff, and while all of them, with exception of the first, which was in the form frequently approved by this court and relates merely to the measure of damages, were based upon the theory that the plaintiff's status was that of an invitee, this circumstance presents no ground for reversal, for as stated by this court in *Belvedere Building Co. v. Bryan, supra*: "The trial court is not bound to go beyond the request of the prayer offered, and grant stronger law than is asked, though it might be able to do so if asked." Of the eleven remaining prayers offered by defendant, the court refused the sixth, seventh, and eighth and granted the others. By its first and second granted prayers, the jurors were instructed as to the effect of contributory negligence on the part of plaintiff. The third, fourth, and fifth prayers required them to find negligence on the part of appellant, and instructed them as to the degree of proof to enable them to find such negligence. Its ninth prayer is subject to the same criticism as has been made concerning most of plaintiff's granted prayers, for it instructed the jury as to the degree of care which it owed appellee, and fixed it as that which was due an invitee; and by its

tenth prayer the jurors were instructed that, if they found the defendant maintained in its building a proper, suitable, and safely constructed elevator, which in turn was operated with due care by competent and capable operators, but that by some unknown cause the elevator was dropped, thereby injuring plaintiff, as alleged in the first count of her declaration, then the defendant was not responsible for such injuries, and the plaintiff was not entitled to recover under the first count, provided the jury further found that the defendant was not negligent in failing to make reasonable and proper inspection of its elevator; and by the eleventh prayer the jury was instructed that if they found the accident mentioned was caused by a defect or flaw in the machinery of the elevator apparatus which was not discoverable on a reasonable and careful examination, according to tests reasonably practicable, then the plaintiff was not entitled to recover under the first count of the declaration.

Since no special exceptions were filed by plaintiff to the two last mentioned prayers, the objection that there was no legally sufficient evidence in the case to show the plaintiff's injuries were caused from an unknown and unanticipated breakdown or flaw in the elevator apparatus is not before us, under section 10 of article 5 of the Code, and we are prevented from considering these instructions upon any basis other than that the evidence to support them was sufficient. However, we feel that, by these and the other granted prayers of the appellant, the case was submitted to the jury on behalf of appellant in its most favorable aspect.

Moreover, we have found no error in the refusal of the defendant's sixth, seventh, and eighth prayers, as the seventh was fully covered by its tenth prayer, which was granted, and the eighth prayer places upon the plaintiff an improper burden of anticipating that the defendant's elevator would be dropped while she was in the act of leaving it, whereas the record is entirely devoid of evidence tending to show she had any knowl-

edge that the elevator was to be dropped, and appellant's employees, who had charge of the elevator, emphatically deny that it was dropped. Notwithstanding an entire absence of evidence in the record tending to show the elevator was not in proper working condition, both before and immediately after the plaintiff's injuries, appellant's sixth prayer would have required the jury to find that by the proper installation of the elevator and apparatus by competent contractors, appellant had discharged its entire duty to the plaintiff, even though without any fault on her part she was injured by its sudden drop. This prayer entirely ignored the not unreasonable inference which the jury could have drawn to the effect that such sudden dropping was caused by appellant's operator in charge of it.

This brings us to a consideration of the rulings relating to testimony. After plaintiff had testified to having "skidded" upon the linoleum which covered the elevator landing at the third floor, she further testified that she was at the time of her injuries wearing a coat that had not since been used and also produced the coat. Her counsel then asked her to point out on what part of the coat the dirty, greasy substance was after she had fallen, and this she did, stating that since her injuries it had not been cleaned, but had at all times been hanging in a closet of her home and was in the same condition as immediately after her fall. After inspecting the coat the court permitted her counsel to exhibit it to the jury without comment. There was no error in this ruling. *Jones, Law of Evidence* (3d Ed.) sec. 399; *State v. Balto. & O. R. Co.*, 117 Md. 280, 83 A. 166.

The second exception seems to present no ruling for review, since the record before us fails to show that the question objected to was answered. The third, fifth, sixth, seventh, and eighth exceptions were taken to the overruling of certain questions asked by plaintiff, and relating either to the presence upon or the removal of grease or wax from the linoleum covering appellant's elevator landing on the third floor, and, even if it could

be conceded that the questions themselves were improper, the answers thereto are such as to convince us that any errors concerning the same were harmless.

Earl W. Campbell, the regular operator of the No. 2 elevator, produced as a witness for defendant, testified that he was in charge of the elevator until 11:30 on the morning of the plaintiff's alleged injuries; that the elevator was at no time dropped as testified to by plaintiff, and he had no knowledge of her fall. A series of questions was then asked the witness on cross-examination by plaintiff's counsel as follows: Has there been any change in the handling of the elevator since that time? Has there been any improvement in the handling of your elevator since January, 1935? Did anybody work on your elevator on January 23rd, 1935? Did some mechanic not connected with O'Neill & Co. work on your elevator the morning of January 23rd, 1935? Were your doors repaired by mechanics not connected with O'Neill & Co. on the morning of January 23rd, 1935? Were any repairs made to the cable of your elevator on January 23rd, 1935? To each of these questions, defendant's counsel interposed an objection which was sustained by the court. Defendant's counsel then stated, "In view of the persistent line of questioning, I ask for withdrawal of a juror and a mistrial." The court overruled the motion, to which action the fourth exception was taken. It is the contention of appellee that since the questions were not answered, appellant was in no way injured. While the court cannot approve of the continued questions on a subject-matter which the court has ruled inadmissible, nor of questions which suggest or assume as a fact what is not in proof nor available to the questioner to put in proof, yet the questions do not here appear, under all circumstances, to have been sufficiently prejudicial to warrant a reversal on this point.

While in *Nelson v. Seiler*, 154 Md. 63, 66, 139 A. 564, 567, it was held that motions of this character were reviewable upon appeal, Chief Judge Bond, speaking for this court, said: "Generally, the choice of measures to

protect the fair, unprejudiced working of its proceedings is left to the discretion of the trial court, and only in exceptional cases will its choice be reviewed in this court.

Since the issues involved seem to have been presented to the jury fairly and impartially, the judgment appealed from must be affirmed.

*Judgment affirmed, with costs to appellee.*