954 A.2d 1073

**The JOHNS HOPKINS HOSPITAL, et al.**

v.

**Jane E.S. CORREIA, et al.**

**No. 49, Sept. Term, 2007.**

Court of Appeals of Maryland.

Aug. 25, 2008.

Ronald U. Shaw (Amanda P. Just of Shaw & Morrow, P.A., Towson, MD), on brief, for petitioners.

Paul D. Bekman (Gregory G. Hopper, Emily C. Malarkey and Katherine O. Porwick of Salisbury, Clements, Bekman, Marder & Adkins, LLC, Baltimore, MD), on brief, for respondents.

Argued before RAKER, * HARRELL, BATTAGLIA, GREENE, JOHN C. ELDRIDGE, (Retired, Specially Assigned), ALAN M. WILNER, (Retired, Specially Assigned) and DALE R. CATHELL, (Retired, Specially Assigned), JJ.

ELDRIDGE, J.

We granted the petition for a writ of certiorari in this tort action in order to review the standard set forth in numerous Maryland cases that owners or operators of elevators owe their passengers the highest degree of care and diligence practicable under the circumstances to guard against injury.

---

* Raker, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, she also participated in the decision and adoption of this opinion.

## I.

On August 30, 2000, respondent Jane Correia was a passenger in one of the elevators located in Johns Hopkins Hospital when a mechanical defect caused the elevator to come to a jarring halt. Mrs. Correia immediately complained of back pain and was taken to the hospital's emergency room. She eventually was required to have surgery on her back and hip for the injuries sustained when the elevator malfunctioned.

Almost three years later, Mrs. Correia and her husband filed a complaint in the Circuit Court for Baltimore City against the owner and operator of the elevator, Johns Hopkins Hospital and Johns Hopkins Health Systems Corporation (hereafter collectively referred to as "Johns Hopkins"). Also named as a defendant was Schindler Elevator Company, an elevator maintenance company with which Johns Hopkins had contracted, about two months before the accident, to service and maintain the elevators. Johns Hopkins did not file a cross-claim against Schindler. The basic allegation lodged against the defendants was that their negligent failure to heed numerous warnings regarding the malfunctioning elevator led to Mrs. Correia's injuries. Evidence presented at trial tended to support this allegation, indicating that the defendants were alerted to the worn condition of certain elevator parts and failed to respond in a diligent manner.

After the evidentiary portion of the trial, the jury was instructed as follows:

> "The owner of a passenger elevator, in this case, Johns Hopkins is the owner of the passenger elevator, is bound to exercise to the highest degree ... care and skill and diligence, practicable under the circumstances to guard against injury to individuals riding on these elevators. This rule of law applies to the owner of the elevator only. It does not apply to the service company Schindler."

The jury was also advised that "[e]ach defendant is entitled to a separate consideration." The verdict sheet reflected this separate consideration by asking the jury to consider indepen-

dently whether Schindler or Johns Hopkins had acted negligently.

Counsel for Johns Hopkins objected to the jury instruction on the ground that the higher standard of care should apply only to attendant operated elevators, not to passenger operated elevators like the one involved in the incident with Mrs. Correia. He argued that the case relied on by the trial judge to fashion the instruction, *O'Neill & Company v. Crummitt*, 172 Md. 53, 190 A. 763 (1937), was "factually very distinguishable" because:

"In that case, which was 68 years ago, there was actually a person, a human being, in the elevator operating the elevator, having the elevator go up and down. And the court at that time saw fit to treat that circumstance as the elevator owner, the elevator operator, was as a common carrier, and, therefore, posed a duty of the highest degree of care and skill and diligence practicable under the circumstances to avoid injury to the person in the elevator. . . .

"The thing that distinguishes that, because this did not have individual human beings in the elevator operating [it], should be distinguished from a common carrier case, it's not applicable on that basis to an automatic operation of elevators. I think it highlights, poses more duty on Johns Hopkins than it does on the elevator expert."

"I look at the evidence in the case, it is clearly shown, Hopkins, which it was its duty to delegate for legal purposes. They can certainly obtain other people who are experts to work on the elevators, and I think that is another basis for objecting to this instruction, and the reason why this instruction shouldn't be given."

At no point did counsel for Johns Hopkins object to the reasonable care standard applied to Schindler or request that Schindler be subjected to a higher standard of care. The Circuit Court decided that the heightened standard of care for elevator owners was "still good law" and overruled Johns Hopkins's objections. The jury determined that Johns Hopkins was negligent, awarded Mrs. Correia $264,500, and jointly

awarded Mr. and Mrs. Correia $35,500 for loss of consortium. The jury found that Schindler was not negligent.

Johns Hopkins appealed to the Court of Special Appeals, arguing that, with respect to the heightened standard of care, previous Maryland cases were distinguishable and that, even if Maryland case law was not sufficiently distinguishable, the prior Maryland cases imposing a heightened standard of care upon owners and operators of elevators were "outdated" and "no longer appropriate." (Appellants' brief in the Court of Special Appeals at 8–9). Johns Hopkins argued that it "should have been held to a standard of reasonable care." (*Id.* at 13). The principal reasons underlying this argument were that "human attendants" hired and trained by elevator owners to operate elevators are no longer used, that now elevators are "automatic and . . . operated by the passengers," and that the owners of modern buildings, instead of being experts "in the inspection, maintenance, repair, replacement or safety of elevators," hire independent contractors "to ensure that the elevators operated safely and effectively." (*Id.* at 8–10). Johns Hopkins also raised in the Court of Special Appeals two evidentiary issues which were not included in the certiorari petition and, therefore, are not before this Court.

The plaintiffs did not appeal the judgment in favor of Schindler Elevator Company. Moreover, Johns Hopkins in the Court of Special Appeals raised no issue about the jury instructions with respect to Schindler or the judgment in favor of Schindler.

The Court of Special Appeals affirmed the judgment of the Circuit Court, holding that the high standard of care reflected in the jury instruction was supported by several Court of Appeals decisions. *Johns Hopkins v. Correia,* 174 Md.App. 359, 921 A.2d 837 (2007). The Court of Special Appeals held that there was "no principled reason why the duty owed to an elevator passenger should be reduced simply because of technological advances." *Johns Hopkins v. Correia, supra,* 174 Md.App. at 378, 921 A.2d at 849.

Johns Hopkins filed a petition for a writ of certiorari, presenting the following issues:

"a. Whether the Court of Special Appeals erred as a matter of law when it affirmed the trial court's decision to instruct the jury that Johns Hopkins, the elevator owner, owed Mrs. Correia, the elevator passenger, 'the highest degree of care and skill and diligence, practicable under the circumstances to guard against injury'?"

"b. Whether the Court of Special Appeals erred as a matter of law when it applied a different standard of care—a higher standard of care—to Johns Hopkins, the elevator owner, than to Schindler Elevator Company ... the full-service elevator maintenance company?"

The plaintiffs did not file a cross-petition for a writ of certiorari. This Court granted the petition, *Johns Hopkins v. Correia*, 400 Md. 647, 929 A.2d 889 (2007), and we shall affirm.[1]

## II.

The principle that elevator owners and operators owe a heightened standard of care to elevator passengers was explained by Chief Judge Alvey for the Court in *Wise v. Ackerman*, 76 Md. 375, 25 A. 424 (1892), a case involving a defective freight elevator. In that case, Chief Judge Alvey distinguished between "an elevator [which] is erected in a factory or warehouse, and is intended to be used only for the purpose of carrying and transferring goods and materials," and a freight elevator which also carries passengers. *Wise v.*

---

1. In light of the facts that no cross-claim was filed against Schindler, that no appeal was taken from the judgment in favor of Schindler, and that Schindler has not been a party to the appellate proceedings in the Court of Special Appeals or in this Court, we cannot interpret the second question in the certiorari petition as presenting an issue concerning the appropriate standard of care owed by an elevator maintenance company. Instead, we necessarily construe the second question as presenting essentially the same issue as the first, namely whether Johns Hopkins as the elevator owner should owe a heightened standard of care. In support of its position that an elevator owner should not owe a heightened standard of care, Johns Hopkins does argue that both the elevator owner and the maintenance company should owe the same standard of care to elevator passengers, namely ordinary care.

*Ackerman, supra,* 76 Md. at 388–389, 25 A. at 425. The Court in *Wise* explained that, if a person decides to ride on a freight elevator which is intended to be used *only* for the purpose of carrying goods, that person "can only require of the defendant the use of ordinary care, either in the construction or operation of the machine." *Wise,* 76 Md. at 389, 25 A. at 425. Chief Judge Alvey, however, then turned to the situation where employees were authorized to use a freight elevator for transportation (*Wise, ibid.*):

> "But an elevator is in many respects a dangerous machine, and though it may be primarily intended only as a freight elevator, yet, if the employees, in the course of their employment, are authorized or directed to use the elevator as means of personal transportation, the employer, controlling the operation of the elevator, is required to exercise great care and caution both in the construction and operation of the machine; so as to render it as free from danger as careful foresight and precaution may reasonably dictate. Nothing short of this will excuse the defendant. . . ."

The Court of Appeals in *Belvedere Building Co. v. Bryan,* 103 Md. 514, 64 A. 44 (1906), applied the principles of *Wise v. Ackerman, supra,* to a passenger elevator in a hotel. In *Belvedere,* a hotel guest was stepping out of an attendant operated elevator when the elevator abruptly went down, striking the guest on his back and hip and causing him to fall on top of the "rapidly descending or dropping elevator" car. The owner of the hotel appealed from a judgment in favor of the injured guest, and this Court affirmed. One of the issues before the Court was "the degree of care required in the operation of a passenger elevator," *Belvedere,* 103 Md. at 533, 64 A. at 49. After discussing and quoting from *Wise v. Ackerman,* as well as a California case cited in *Wise,*[2] the Court in *Belvedere* held (103 Md. at 535, 64 A. at 50, emphasis in original):

---

**2.** *Treadwell v. Whittier,* 80 Cal. 574, 22 P. 266 (1889).

"[W]hen an elevator is used, under due authority, *as a means of personal transportation, great care and caution is required, and nothing less will suffice to protect the operator.* Ordinary care is not great care, and this case therefore is authority for holding that where an elevator is used as a means of personal transportation a *higher* degree of care than *ordinary* care is required in its operation. Whether the *highest* degree of care is required in such case would seem to be the only question left open for consideration under the language of that decision, and that question will now be considered."

The *Belvedere* opinion went on to hold that the highest degree of care is required, quoting with approval from a negligence treatise of that time [3] (103 Md. at 535, 64 A. at 50):

" 'For the same reason—a regard for human life—that common carriers are required to exercise the highest degree of care for the safety of their passengers, irrespective of any contract of carriage, a like degree of care is exacted of a landlord in transporting persons by elevator between the several floors of his building. He is therefore bound to use the greatest care, not only in providing, safe and suitable cars, appliances, and machinery for control, but also in managing these means of transportation.' "

The Court in *Belvedere* continued by quoting with approval numerous other authorities taking the positions that there " 'is no distinction in law between the duties and liabilities of a carrier by elevator and one by railroad,' " that there is no situation " 'where the law demands a higher degree of care than in the construction and operation of passenger elevators,' " that owners or operators of passenger elevators have the same " 'legal status' " as " 'a common carrier,' " that the elevator owner or operator " 'is the bailee, so to speak, of human beings, and has their lives in his custody,' " that " 'no distinction can be drawn between vertical transportation and horizontal transportation,' " etc. *Belvedere,* 103 Md. at 536–

---

**3.** Vol. 2, *Shearman and Redfield on Negligence,* § 719A.

539, 64 A. at 50–51. The Court then reiterated (103 Md. at 539–540, 64 A. at 51, emphasis in original):

"The liability of the *common* carrier is not imposed because he is a common carrier, but because he is a *carrier* of passengers, because as Judge Cooley states it in *Cooley on Torts*, 2 ed. 768 and 769, 'there are committed to his charge for the time the lives and safety of persons of all ages and of all degrees of ability of self-protection, and as the slightest failure of watchfulness may be destructive of life or limb, it is reasonable to require of him the most perfect care of prudent and cautious men as far as human foresight and care can reasonably go.' The liability is not imposed upon the owner or occupant of real property as such, but irrespective of such ownership and occupancy and because he is engaged in the undertaking of running an elevator *as a means of personal transportation,* which Judge Alvey has said in *Wise v. Ackerman* requires a *higher* degree of care than ordinary care."

The *Belvedere* opinion, 103 Md. at 540, 64 A. at 51–52, concluded by quoting from *Fox v. Philadelphia,* 208 Pa. 127, 134–135, 57 A. 356, 358 (1904):

" 'The foundation of the rule for the protection of a passenger is in the undertaking of the common carrier which is to carry safely; but another reason for it is, that when the passenger commits himself to the carrier, he does so in ignorance of the machinery and appliances (as well as of their defects) used in connection with the means of transportation, and becomes a passive and helpless creature in the hands of the transportation company and its agents. For the same reason, this rule should be extended to those who operate elevators for carrying passengers from one story of a building to another. When they undertake to carry, they undertake to carry safely. If it is not their express agreement to do so, it is surely an implied one, and the condition of a passenger caged in a suspended car is one not only of utter ignorance of what has been done or ought to be done for his safety, but of absolute passiveness and pitiable helplessness when confronted with danger against

which human knowledge, skill, and foresight ought to have guarded; and the rule has been so extended.' The view thus expressed is in accord with our own, and we think it well grounded both in reason and authority."

The decision in the next elevator case to come before this Court, *Owners' Realty Co. v. Richardson*, 158 Md. 367, 148 A. 543 (1930), is most significant because the Court in that case applied the principles of *Belvedere* to an injury caused by a defective passenger operated automatic elevator. The elevator was in an apartment house of six stories, owned by the defendant. The plaintiff was standing immediately outside of the elevator and was attempting to open the elevator door by use of a "knob" for that purpose, "but ... she had barely touched the knob when the door slammed back very rapidly, startling her, and catching her finger between the laths with such force as to swing her around," *Owners' Realty Co. v. Richardson, supra*, 158 Md. at 371, 148 A. at 545. There had previously been complaints about the rapid and sudden movements of the elevator door. In affirming a judgment in favor of the plaintiff, the Court, in an opinion by Judge Parke, indicated that the heightened standard of care was particularly applicable to a passenger operated automatic elevator (*Richardson, ibid.*, emphasis added):

"The defendant was engaged in the carriage of its tenants and their servants and visitors by means of an automatic elevator, which was operated by those using it without any assistance, direction, or supervision by the defendant. It was an economical method to cast the burden of its operation upon those having occasion to go to and from the several apartments of the six storied building, *but the knowledge of the defendant that it would be run by a number of persons, who would represent a wide range of age, experience, intelligence, and capacity, cast upon the defendant all the more care in the selection and maintenance of the mechanical device* which was adopted for this general service. The rule approved by this court is that the landlord engaged in transporting passengers by elevators must exercise *great care* not only in their operation but *in*

*providing safe and suitable equipment.* It is a rule which has its sanction in sound public policy, which exacts a high degree of care where security of person and life is frequently involved, under circumstances in which the carrier is in control of the movement or of the equipment *Belvedere Bldg. Co. v. Bryan,* 103 Md. 514, 534–540, 64 A. 44 . . . . "

Seven years later, the case of *O'Neill & Company v. Crummitt, supra,* 172 Md. 53, 190 A. 763, involved an attendant operated passenger elevator in a department store. The plaintiff, a passenger in the elevator, desired to exit at the third floor. When the elevator reached the third floor, and the doors opened, the elevator was stopped about four inches above the level of the floor. As the plaintiff was exiting, the elevator dropped suddenly, causing the plaintiff to lose her balance. Furthermore, when the plaintiff touched the third floor, she slipped on a greasy substance in such a manner that her back struck the elevator. An "inspection, according to the undisputed testimony, revealed that the outer elevator door could be opened with the elevator floor approximately four inches above or below the landing floor." *O'Neill,* 172 Md. at 60, 190 A. at 766. There was also evidence that, "with both doors open, the elevator could have been caused to drop by manipulation of the operator." *Ibid.*

In affirming a jury award in favor of the injured plaintiff, this Court in *O'Neill* was emphatic regarding the department store's standard of care (172 Md. at 61, 190 A. at 766):

"In *Belvedere Building Co. v. Bryan, supra,* this Court held that the owner or operator of a passenger elevator was bound to exercise the highest degree of care and diligence practicable under the circumstances, to guard against injuries to persons riding in such elevator. In view of that decision the question under consideration cannot be regarded as an open one in this state."

Moreover, the Court in *O'Neill* held that a person's status as a passenger did not automatically terminate as soon as the person was outside of the elevator (172 Md. at 61–62, 190 A. at 766):

"Certainly we do not feel that it can be said, as a matter of law, that appellant, whose duty it was to exercise the highest degree of care and diligence practical under the circumstances for the safety of appellee, has fulfilled such duty by permitting its elevator landing, where it discharged passengers, to be in the condition described by the plaintiff, for obviously her status as a passenger continued while leaving the elevator and until she had been landed safely."

*See also Otis Elevator Co. v. Embert,* 198 Md. 585, 599–600, 84 A.2d 876, 882–883 (1951) (reiterating the heightened standard of care owed to passengers by owners or operators of passenger elevators, although the issue in the case was whether the owner was entitled to recover, under a third party complaint, from the elevator maintenance company).

The most recent case in this Court discussing the heightened standard of care owed by elevator owners was *Flowers v. Rock Creek Terrace,* 308 Md. 432, 520 A.2d 361 (1987). *Flowers* was a tort action by a fireman against an apartment building owner, based on injuries sustained by the fireman when, while responding to a fire in the apartment building, he fell down an open elevator shaft. The shaft was open because, allegedly, the elevator system was defective. While the issues and the discussion in the opinion predominantly concerned the so-called "fireman's rule," the plaintiff did raise an argument under the cases dealing with the heightened standard owed by owners of elevators, and this Court rejected the argument based on those cases. We held as follows (*Flowers,* 308 Md. at 452, 520 A.2d at 371):

"In count XV, Flowers asserted that Rock Creek and Westinghouse owed a duty of care like that of a common carrier because they provided, maintained, and operated elevators at the apartment building. But the higher duty a common carrier owes extends only to its passengers. *Sheridan v. Balto. & Ohio R. Co.,* 101 Md. 50, 57, 60 A. 280 (1905). *See Jackson v. Hines,* 137 Md. 621, 626, 113 A. 129 (1921). The analogous higher duty owed by an elevator operator is to its passengers. *O'Neill & Company v. Crummitt,* 172 Md. 53, 60, 190 A. 763 (1937) ('the degree of care

due by the owner of a passenger elevator to those who are expressly or impliedly invited to ride therein is similar to that which a common carrier owes its passengers'). Flowers was not a passenger. . . . ”

## III.

The cases reviewed above firmly establish, as a Maryland common law principle, that owners of elevators owe to elevator passengers the highest degree of care and diligence practicable under the circumstances. Nevertheless, a " 'common law rule may, within constitutional constraints, be changed or modified by legislative enactment or judicial decision where it is found to be a vestige of the past, no longer suitable to the circumstances of our people,' " *Owens v. State,* 399 Md. 388, 413, 924 A.2d 1072, 1086 (2007), quoting *Jones v. State,* 303 Md. 323, 337 n. 10, 493 A.2d 1062, 1069 n. 10 (1985). *See also, e.g., Price v. State,* 405 Md. 10, 23, 949 A.2d 619 (2008) (A common law rule was modified in light of several recent judicial decisions which undermined the common law rule); *Fox v. Wills,* 390 Md. 620, 635, 890 A.2d 726, 735 (2006); *Davis v. Slater,* 383 Md. 599, 614, 861 A.2d 78, 86–87 (2004); *Baltimore Sun v. Baltimore,* 359 Md. 653, 662, 755 A.2d 1130, 1135 (2000); *Bowden v. Caldor,* 350 Md. 4, 27, 710 A.2d 267, 278 (1998); *Owens–Illinois v. Zenobia,* 325 Md. 420, 469–470, 601 A.2d 633, 657–658 (1992), and cases there collected.

Johns Hopkins argues that "the continued application of the heightened standard" of care owed by elevator owners is not justified and "request[s] this Court [to]reevaluate the equity and utility of its continued application." (Petitioners' Reply Brief at 9). In support of its position, Johns Hopkins advances arguments similar to those made in the Circuit Court and in the Court of Special Appeals. Johns Hopkins argues that "[t]his Court has not . . . examine [d] the heightened standard of care since *O'Neill* was decided in 1937," that there have been "technological advancements . . . in the elevator industry since 1937," that elevators now, such as the one involved in this case, have "no human attendant operating [the] elevator," whereas "the source of injury" in prior Mary-

land cases "was the negligent operation of the elevator by its human attendant," that today "the unpredictable element of human error has been eliminated," and that the elevator in the case at bar "malfunctioned due to aging and worn parts" which fell within Schindler's "responsibility . . . to maintain the elevator." (Petitioners' Opening Brief at 9–13).

While Johns Hopkins "acknowledge [s] that an elevator owner's duty—whether under a common carrier standard of liability or a reasonableness standard of care—is not delegable," the petitioners contend that a modern elevator owner's justifiable reliance on a maintenance company should result in both the owner and the maintenance company owing the same duty, *i.e.,* ordinary care. (*Id.* at 14). Johns Hopkins states that "there was no evidence in *O'Neill* or *Belvedere* that service or repair was conducted by an independently contracted elevator expert." (*Id.* at 12–13). Finally, Johns Hopkins maintains that different standards of care owed by elevator owners and maintenance companies serve "only to confuse and mislead the jury." (*Id.* at 26).

Preliminarily, the contention that this Court has not considered the heightened standard of care owed by elevator owners since 1937 is not entirely accurate. It overlooks the 1987 opinion in *Flowers v. Rock Creek Terrace, supra,* 308 Md. at 452, 520 A.2d at 371, and the 1951 opinion in *Otis Elevator Co. v. Embert, supra,* 198 Md. at 599–600, 84 A.2d at 882–883. In addition, the majority rule in this country is that owners of elevators or escalators owe a heightened standard of care to their passengers, and there are numerous recent cases in our sister states reaffirming this standard. For a thorough review of cases in other jurisdictions, see Judge Salmon's opinion for the Court of Special Appeals in the case at bar. *Johns Hopkins v. Correia, supra,* 174 Md.App. at 365–373, 921 A.2d at 841–845.

While there have been technological changes in elevators over the years, just as there have been technological changes in common carriers and most other machines, instruments, equipment, chattels, processes, etc., this in itself furnishes no

reason to change basic legal principles. Instead, well-established legal principles frequently apply very well to new technology. As the Court of Special Appeals pointed out in the present case, over the last century "motor buses have replaced the stage coach, taxi cabs have replaced Hanson cabs, and overall transportation and safety technology has improved exponentially. Yet the duty owed by the common carrier to its passengers has remained constant." *Johns Hopkins v. Correia, supra,* 174 Md.App. at 378, 921 A.2d at 849. Furthermore, automatic passenger operated elevators were not invented subsequent to this Court's opinions dealing with the heightened standard of care owed to passengers by elevator owners. The first automatic passenger operated elevator was introduced in 1894. *See* George Strakosch, *The Vertical Transportation Handbook,* at 4(1998).

Essentially, Johns Hopkins's position is that the heightened standard of care, developed in this Court's earlier opinions, was based upon attendant operated elevators, and involved negligent operation of the elevators by the human attendants. Today, according to Johns Hopkins, elevators are automatic with the passengers operating them, and the tortious conduct is usually a defect in the elevator itself such as worn parts. Furthermore, Johns Hopkins asserts that modern elevators are serviced by expert independent maintenance companies, whereas the elevator owners serviced the older attendant operated elevators. Johns Hopkins submits that these changes warrant a modification of the common law. An examination of the previously reviewed Maryland cases, however, presents an entirely different picture from the one drawn by Johns Hopkins. What Johns Hopkins relies upon as new or changed circumstances were fully considered in this Court's opinions. Moreover, the arguments made by Johns Hopkins overlook the principal reason for imposing upon elevator owners the same duty of care which is imposed on common carriers.

*Wise v. Ackerman, supra,* 76 Md. 375, 25 A. 424, the first Maryland case setting forth the heightened standard of care, did not involve negligent operation of the elevator by an

attendant. Instead, the plaintiff's injury resulted "from what is alleged to have been a defective and dangerously constructed elevator," 76 Md. at 386, 25 A. at 424. In fact, the Court's opinion in *Wise* describes in detail the various alleged defects in the elevator, including parts that were "permitted to ... remain out of repair," 76 Md. at 386, 25 A. at 424–425. Chief Judge Alvey's opinion for the Court made it clear that the elevator owner "is required to exercise great care and caution *both in the construction* and operation of the machine," 76 Md. at 389, 25 A. at 425, emphasis added.

The declaration in *Belvedere Building Co. v. Bryan, supra,* 103 Md. at 523–525, 64 A. at 45–46, contained two counts, with the first count alleging that "the sudden dropping and ascent of said elevator ... was caused by the improper and defective construction and maintenance of the machinery," and the second count alleging negligence by the elevator attendant. Although the Court affirmed the judgment in favor of the plaintiff under the second count, this Court's opinion made it clear that the elevator owner's heightened duty of care extended to " 'providing, safe and suitable cars, appliances, and machinery,' " *Belvedere,* 103 Md. at 535, 64 A. at 50.

As earlier discussed, the next case, *Owners' Realty Co. v. Richardson, supra,* 158 Md. 367, 148 A. 543, is quite significant because it involved defective doors in a passenger operated automatic elevator located in a six story apartment building. Moreover, as this Court emphasized in *Richardson,* 158 Md. at 371, 148 A. at 545, the fact that the elevator was automatic and passenger operated should "cast upon the defendant all the more care in the selection and maintenance of the mechanical device...." The Court continued (*ibid.,* emphasis added):

"The rule approved by this Court is that the landlord engaged in transporting passengers by elevators must exercise *great care* not only in their operation but *in providing safe and suitable equipment.*"

In *O'Neill & Company v. Crummitt, supra,* 172 Md. 53, 190 A. 763, there was evidence of a defect allowing the outer

elevator door to open when the elevator was four inches above or four inches below the proper floor. There was also evidence of negligence by the defendant's employees. In affirming a judgment for the injured plaintiff, this Court held that, under settled law, "the owner or operator of a passenger elevator was bound to exercise the highest degree of care and diligence ... to guard against injuries to persons riding in such elevator." *O'Neill,* 172 Md. at 61, 190 A. at 766. The Court, in this regard, drew no distinction between a defect in the elevator and the negligence of the elevator attendant. And, as previously discussed, the most recent case discussing the heightened duty owed to passengers by elevator owners, *Flowers v. Rock Creek Terrace, supra,* 308 Md. at 452, 520 A.2d at 371, involved allegations of a defective elevator.

It is obvious that this Court's opinions fail to support Johns Hopkins's theory that the heightened standard of care owed to passengers by elevator owners was grounded upon attendant operated elevators and negligence by the attendants. The cases involved both defects in the elevators and the negligence of the elevator owners' employees. To the extent that any of the Maryland cases drew a distinction between attendant operated elevators and automatic elevators operated by passengers, the latter situation warranted even "more care" by the elevator owner. *Richardson,* 158 Md. at 371, 148 A. at 545. Furthermore, there is no support in the prior Maryland cases, or any other authority cited, for Johns Hopkins's assertion that elevator owners, at the time most of the Maryland cases were decided, did not hire independent experts to service or repair elevators, whereas today elevator owners do hire such independent contractors.

Johns Hopkins intimates that today elevators are safer because "the unpredictable element of human error has been eliminated." Nothing cited by Johns Hopkins, however, supports this contention. We note that the United States Consumer Product Safety Commission NEISS Data Highlights for the Calendar Years 2007 and 2006, estimates that in the year 2007 there were 19,055 injuries from elevators and other lifts, and that in the year 2006 there were 20,974 injuries from

elevators and other lifts. The record in this case gives us no basis for concluding that elevators today are safer than they were in 1930 or 1937.

■ There is no merit in Johns Hopkins's contention that different standards of care owed by elevator owners and maintenance companies will confuse the jury. First, as earlier noted, *supra* n. 1, no issue regarding a maintenance company's standard of care is before us. Second, if we assume *arguendo* that the maintenance company owes only ordinary care, the argument is still not a valid ground for changing Maryland common law. There are many situations where tort law recognizes different standards applicable to different defendants in the same case, and juries routinely deal with such matters. For example, one or more tort defendants may be entitled to qualified immunity, while other defendants in the same case may not. Both a common carrier defendant and non-common carrier defendants may be joined in the same case, with different standards applicable. Multiple causes of action may call for different standards being applied to the same factual circumstances. Many other examples of different standards being applied in the same case could be listed. While there may occasionally be jury confusion, we have confidence that, for the most part, juries are capable of satisfactorily resolving such cases. Different standards, applicable to different categories of defendants, furnish no basis for changing an established common law principle.

■ The reason why an elevator owner owes the same heightened standard of care which common carriers owe is not because of the operational characteristics of particular types of elevators or the source of the passenger's tortious injury. Instead, the fundamental reason for the heightened standard of care owed by both a common carrier and an elevator owner is that each "is a carrier of passengers" who " 'are committed to his charge' " and who rely upon the carrier or elevator owner for their safety. *Belvedere Building Co. v. Bryan, supra,* 103 Md. at 539–540, 64 A. at 51. The heightened standard of care is rooted "in sound public policy, which exacts

a high degree of care where [the] security of person[s] ... is frequently involved," *Owners' Realty Co. v. Richardson, supra,* 158 Md. at 371, 148 A. at 545.

Consequently, we decline to change the Maryland common law principle that owners or operators of elevators owe to their passengers a heightened standard of care.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE PETITIONERS.*